#076395

ORIGINAL

FILED

MAR 21 2014

U.S. COURT OF
FEDERAL CLAIMS

## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| Comprehensive Community Health & Psychological Services, LLC<br>1250 H Street, NE<br>Washington, DC 20002<br><br>v.<br><br>The United States | No. _____<br><br>14- 222C |

## COMPLAINT

### JURISDICTION

1. Jurisdiction of this court is based upon 28 U.S. Code § 1491(a)(1), *et seq.*

### PARTIES

2. Plaintiff Comprehensive Community Health & Psychological Services, LLC ("CCHPS" or "Claimant") provides psychological counseling for patients, particularly inmates in the District of Columbia, pursuant to contract.

### STATEMENT OF CLAIM

3. On July 1, 2011 Contract No. CSOSA 11-CT-0014 to provide certain psychological services was awarded to Comprehensive Community Health & Psychological Services, LLC ("CCHPS" or "Plaintiff"). CCHPS hereby challenges: (1) the Court Service and Offender Supervision Agency's ("CSOSA") determination of amounts owed for disputed invoices consequent to (2) the erroneous decision of the CSOSA to terminate for cause, having presented no evidence supporting said decision and further seeks to modify the nature of CSOSA's termination to one of convenience.


RECEIVED
MAR 21 2014
OFFICE OF THE CLERK
U.S. COURT OF FEDERAL CLAIMS

## FACTS COMMON TO ALL CLAIMS

4. Commencing July 1, 2011, CCHPS provided psychiatric services at CSOSA's District of Columbia ("D.C") Supervision Agency's Re-Entry and Sanctions Center pursuant to the referenced contract. CCHPS provided the psychologists and psychiatrists, supervision, labor, materials and supplies necessary to provide psychiatric evaluations, interventions, medication management services and training pursuant to said contract.

5. On June 29, 2012, Tammie Crank, Director, Office of Procurement for CSOSA's sent CCHPS a cure notice regarding its services. The cure notice was stamped with, and appeared to be under, the seal of the District of Columbia.[1]

6. According to the CSOSA Cure Notice, an internal review of invoices, records and services rendered revealed "several serious deficiencies and issues of noncompliance" including: (1) misrepresenting actual time during contractor tour of duty; (2) failure to submit invoices and bill for CLIN in accordance with 6.4 Invoice Requirements, item (c); (3) omission of hours that support time spent for each client served and each contract CLIN from the Client Psychiatric Daily Contact Form as requested by the Contracting Officer Technical Representative (COTR); and failing to "adhere to the agreed upon daily work schedule".

7. On July 8, 2012 Claimant provided a timely and detailed response to what appeared to be the District's (as opposed to a federal agency's notice) Cure Notice

---

[1] The National Capital Revitalization and Self-Government Act of 1997( "Revitalization Act") established the Court Services and Offender Supervision Agency for the District of Columbia within the federal government as an independent executive branch agency.

2

but to no avail. On or about November 28, 2012 CSOSA cancelled the referenced contract for cause. In addition and in consequence thereto, on March 25, 2013 CSOSA failed to properly account for disputed invoices for services rendered by Complainant for the period of April through November 2012.

## CLAIMS

8. CCHPS files this complaint on two grounds: (1) plaintiff challenges and seeks reconciliation of outstanding payments due to CCHPS necessarily flowing from (2) the Agency's erroneous decision to terminate it for cause. CCHPS further seeks the rescission of the termination for cause and conversion of same to one for convenience because Complainant was not presented with specific evidence buttressing the allegations set forth in the Agency's Cure Notice. For example, the Agency's Cure notice makes mention of CCHPS staff misrepresenting actual times of attendance omitting actual times of arrival and departure for the months of March, April, May, and June 2012. However the government failed to offer evidence of specific dates on which the alleged misrepresentations supposedly occurred.

### CSOSA Presented no Specific Evidence of CCHPS Recording More Time than Actually Worked

9. CSOSA's Cure Notice alleged that Plaintiff's staff was recording more time than actually worked. Aside from the unsupported allegation of supposed wrongdoing again, the government provided no evidence as to how Complainant's staff supposedly engaged in this behavior. During the Agency's

internal investigation no inconsistencies were noted in relationship to hours worked or tour(s) of duty over the period in question.

10. Assuming *arguendo* the truth of the allegations in the Cure Notice, it is standard operating procedure to identify the perpetrator, confront him or her with evidece and allow a contractor to remove the personnel accused of misrepresenting time during the tour of duty rather than impose the ultimate sanction of contract termination.

## CCHPS Staff Adhered to the Work Schedule

11. The practice of psychiatry does not lend itself readily to established schedules due to the unpredictability of patients' episodic or psychotic behavior, the acuity of treatment to be rendered and the amount of time needed to service specific episodes or patient needs.

12. Nonetheless, CCHPS submitted a preliminary schedule to provide psychiatric services with its proposal. CCHPS further indicated the intent to have two other Contractors provide psychiatric services.

13. Since the issuance of this contract the schedule was as follows: Johnson- Mondays, Wednesdays, and Fridays 4-10pm, Adewale - Tuesday 5:30pm and the last Saturday of each Month 9-1pm through June 2012.

14. In a phone conversation with a Mr. Wells on May 31, he asked that CCHPS staff adhere to a tentative schedule submitted as an addendum to the proposal.

15. Consistent with the inherently unpredictability of this medical field, it is instructive to note that on numerous occasions CCHPS's psychiatric staff were asked to provide more hours or provide emergency services than originally

contemplated.

16. By way of illustration, on May 26, 2012 Mr. Wells text a request to CCHPS for "5 additional approved hours". CCHPS could not provide the additional time on that specific date due to prior obligations. However, CCHPS provided the additional 5 hours on May 27, 2012.

17. On instances where there were not a lot of patients to be seen, CCHPS staff would leave, reserving those hours for Intakes, which take longer to accomplish.

## CCHPS Staff Properly Invoiced for Each CLIN

18. The Agency's Cure Notice also claimed Appellant failed to submit invoices and bill for each CLIN. CLIN 2001A (Conducting Psychiatric Evaluations) and CLIN 2002C ( full range of medication management services that includes writing prescriptions for treating diagnosed psychiatric disorders and monitoring dosage and medication types) are both broad and encompass the majority of treatment services provided.by CCHPS staff.

19. In its defense, CCHPS staff provided many *pro bono* services to the government to support this psychiatric contract. Some of the services provided by Appellant, *pro bono* did not have a CLIN. Thus it would be impossible to use accurate CLINs for services requested and provided by CCHPS that do not have a CLIN.

20. CCHPS contractors have been requested to travel for various purposes, which they have done. Further, CCHPS contractors received on average, three phone calls per week from RSC staff requesting services not represented on any CLIN in accordance with 6.4 Invoice Requirements.

21. These services range from requesting Clinicians to call Medicaid to obtain medication approval which can be very time consuming, providing telephone orders for medication when clients are transferred with medication and an order is necessary prior to medication dispensing, telephone psychiatric consultation to change/add medication(s), triage symptoms, emergency triaging, etc.

## CONCLUSION

Two matters are consistently and glaringly absent from the Cure Notice: evidence of the alleged wrongdoing and deficiencies in treatment provided. The lack of evidence to substantiate the Agency's allegations provide the basis of declaring its termination decision arbitrary and capricious. Consequently, Appellant argues the decision constituted a wrongful termination where the Agency used the most draconian measure to correct an issue that may not truly exist.

## STATEMENT OF RELIEF SOUGHT

22. Wherefore based upon the factual record hereby asserted, Claimant respectfully urges this court to reverse the Agency's decision to terminate the subject contract and to award CCHPS a sum, based upon a strict accounting, commensurate to that which Complainant would have received had the Agency not terminated the contract improperly. Alternatively, Complainant requests that the Agency's decision be changed to termination for convenience as opposed to termination for cause with a strict accounting for the amounts invoiced and paid for the months of March 1, 2012 through August 2012. Claimant further requests attorneys fees and costs where appropriate.

Respectfully submitted,

_____
Donald M. Temple #408749
1101 15th Street, NW, Suite 910
Washington, DC 20005
Tel: (202) 628-1101
Fax: (202) 628-1149
dtemplelaw@gmail.com