# In the United States Court of Federal Claims

No. 14-222C

(Filed: March 12, 2015)

| | |
|---|---|
| COMPREHENSIVE COMMUNITY HEALTH & PSYCHOLOGICAL SERVICES, LLC, <br><br> Plaintiff, <br><br> v. <br><br> THE UNITED STATES, <br><br> Defendant. | **Contract Disputes Act (CDA), 41 U.S.C. §§ 7103 and 7104; Motion to Dismiss, Rule 12(b)(1).** |

Donald M. Temple, Washington, D.C., Attorney of Record for Plaintiff.

Nicholas Jabbour, Trial Attorney, Donald E. Kinner, Assistant Director, Robert E. Kirschman, Jr., Director, Joyce R. Branda, Acting Assistant Attorney General, United States Department of Justice, Washington, D.C., and Brian Battles, Assistant General Counsel, Court Services and Offender Supervision Agency, of Counsel, Attorneys of Record for Defendant.

**MEMORANDUM OPINION AND ORDER**

GRIGGSBY, Judge

## I.   INTRODUCTION

The Court has before it defendant's motion to dismiss this case for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC"). Defendant filed its motion on July 28, 2014 and the parties have fully briefed the matter. For the reasons set forth below, defendant's motion is **GRANTED**.

## II.   BACKROUND

### A.   Factual Background[1]

This dispute involves a contract to provide counseling services for offenders and defendants who have a history of substance abuse and are seeking to re-enter society following

---

[1] The facts recited in this Memorandum Opinion and Order are taken from plaintiff's complaint ("Compl. at ¶ ___"), defendant's motion to dismiss ("Def. Mot. at ___"), the appendix to defendant's motion to dismiss ("Def. App at ___"), plaintiff's response to defendant's motion to

incarceration. On July 1, 2011, the Court Services and Offender Supervision Agency ("CSOSA") awarded a contract to plaintiff, Comprehensive Community Health & Psychological Services, LLC ("CCHPS"). *Id.* at ¶ 4. Under the contract, CCHPS was to provide psychiatric counseling services at the Re-Entry and Sanctions Center located in Washington, D.C. ("RSC").[2] *Id*. The contract called for an initial performance period of July 1, 2011 through September 30, 2011, with the option for the government to renew the contract for up to four additional years. Def. Mot. at 2.

After one year of performance, problems arose. On June 29, 2012, the CSOSA contracting officer directed CCHPS to cure what CSOSA perceived to be several violations and matters of noncompliance under the contract. Compl. at ¶¶ 5-6. Among other things, the government's Cure Notice stated that a review of CCHPS's invoices revealed that the contractor had misrepresented the amount of time spent by its personnel under the contract, thereby overbilling the government. *Id*. at ¶ 6. CCHPS disagreed and responded to the Cure Notice on July 8, 2012. *Id*. at ¶ 7. On August 10, 2012, CSOSA sent CCHPS a letter outlining the deficiencies under the contract in greater detail and requesting a corrective action plan. Def. App. at A8-A12. CSOSA, subsequently, sent another letter to CCHPS, entitled "CSOSA Treatment Invoice Dispute," on November 7, 2012, disputing the charges on an invoice seeking payment for services performed at the RSC during August 2012. Pl. App. at A2 (ECF No. 13-2).

On November 28, 2012, the contracting officer issued a final decision terminating the contract for cause, stating that CCHPS materially misrepresented the services performed for billings. Def. App. at A1-2; *see also* Compl. at ¶ 7. The final decision further stated that:

> The following four invoices have been submitted by your client and were disputed by the Government:
>
> | Unpaid invoices | Amount |
> |---|---|
> | May 2012 | $18,810.00 |
> | June 2012 | $19,593.75 |
> | July 2012 | $17,407.50 |
> | August 2012 | <u>$14,808.75</u> |
> | Total Unpaid | $70,620.00 |
>
> As of this date, the invoice disputes have not been addressed by your client and the Government estimates it has been overbilled by $61,205.50 for the period March 1, 2012 through August 30, 2012.

---

dismiss (Pl. Op. at ___") and the appendix to plaintiff's response to defendant's motion to dismiss (Pl. App. at __") .

[2] The RSC is a 102-bed facility located on the grounds of D.C. General Hospital, which provides high-risk offenders and defendants with a four-week intensive assessment and reintegration program. Def. Mot. at 2.

Def. App. at A1-A2.  CCHPS received the final decision on November 28, 2012.  Def. App. at A3.

On March 25, 2013, the contracting officer sent a letter to CCHPS entitled "Contract Settlement by Determination," stating that a government analysis of its outstanding invoices found that CCHPS had overbilled the government:

> This letter is to inform you of the Government's final decision after reviewing all available records on the disputed invoices.  The disputed invoices outlined in our letter dated November 28, 2012 have been reviewed for settlement in conjunction with reports from the Program Office.  The schedule below is a summary of the amounts invoiced, paid and overbilled for services performed from March 1, 2012 through August 2012 for the Court Services and Offender Supervision Agency (CSOSA).  Based on my review of all available information, I conclude that CSOSA owes your client (Comprehensive Community Health and Psychological Services, LLC) the amount of $9,434.50.  Accordingly, I will immediately request payment to be made to your client.

Def. App. at A4; *see also* Compl. ¶ 7.  Thereafter, CSOSA paid CCHPS the balance due on the contractor's outstanding invoices, offset by the amount of money that the government believed it had been overbilled.  *Id.*

### B.   Procedural Background

CCHPS filed its complaint in this Court on March 21, 2014.  *See generally* Compl.  In its complaint, CCHPS seeks the "reconciliation of outstanding payments" that plaintiff believes it is due for work performed under the contract.  Compl. at ¶ 8.  Secondly, CCHPS seeks conversion of the government's decision to terminate its contract for cause to a termination for convenience.  Compl. at ¶¶ 8 and 22.

On July 28, 2014, the government filed a motion to dismiss CCHPS's complaint for lack of subject-matter jurisdiction.  Def. Mot. at 1.  CCHPS filed a response in opposition to the government's motion on December 1, 2014,[3] arguing that the Court possesses jurisdiction to consider its claims.  *See generally* Pl. Op. The government filed its reply brief on December 18, 2014.  Having determined that oral argument is not necessary, the Court addresses the pending motion.

---

[3]  Plaintiff filed a response to the government's motion to dismiss out of time on September 29, 2014, with no accompanying motion for leave to file out of time.  Pursuant to the Court's Order to Show Cause dated October 3, 2014, that filing was stricken from the docket.  On November 14, 2014, the Court ordered plaintiff to file its response to the government's motion to dismiss by December 1, 2014.

## III.  LEGAL STANDARDS

### A.  Standard of Review

A motion to dismiss under RCFC 12(b)(1) will be granted if the plaintiff fails to assert appropriate subject-matter jurisdiction, as "subject-matter jurisdiction is strictly construed." *Telemaque v. United States*, 82 Fed. Cl. 624, 626 (2008); *Leonardo v. United States*, 55 Fed. Cl. 344, 346 (2003).  In considering the issue of subject-matter jurisdiction, this Court must presume all undisputed factual allegations in the complaint to be true and construe all reasonable inferences in favor of the plaintiff.  *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed. Cir. 1988).  However, when a motion to dismiss challenges the factual basis of the Court's jurisdiction, the allegations in the complaint do not control, "and only uncontroverted factual allegations are accepted as true for purposes of the motion."  *Cedars–Sinai Med. Ctr. v. Watkins,* 11 F.3d 1573, 1583 (Fed. Cir. 1993); *see also Vaeth v. United States,* 110 Fed. Cl. 425, 429 (2013).  The Court may consider materials extrinsic to the pleadings to determine the existence of subject-matter jurisdiction. *Cedars–Sinai Med. Ctr.*, 11 F.3d at 1584.  A plaintiff bears the burden of establishing subject-matter jurisdiction, *Alder Terrace, Inc. v. United States*, 161 F.3d 1372, 1377 (Fed. Cir. 1998) (citing *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936)), and must do so by a preponderance of the evidence.  *Reynolds*, 846 F.2d at 748 (citations omitted).  If jurisdiction is found to be lacking, the Court must dismiss the case.  *See* RCFC 12(h)(3).

### B.  The Contract Disputes Act

The United States Court of Federal Claims is a court of limited jurisdiction and the Court "possess[es] only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  Under the Tucker Act, the Court has limited jurisdiction to adjudicate "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1) (2011).  Specifically, the Tucker Act provides that this Court "shall have jurisdiction to render judgment upon any claim by or against, or dispute with, a contractor arising under section 7104(b)(1) of title 41 [the Contract Disputes Act], . . . on which a decision of the contracting officer has been issued under section 6 of that Act." 28 U.S.C. § 1491(a)(2).  Thus, the key to establishing jurisdiction pursuant to the Tucker Act is to demonstrate compliance with the requirements of the Contract Disputes Act ("CDA").

As a prerequisite to this Court's jurisdiction, the CDA requires that all claims by a contractor against the government relating to a contract shall be in writing and shall be submitted to the contracting officer for a decision.  41 U.S.C. § 7103(a).  If the claim made by the contractor is for more than $100,000, the contractor must certify the claim.  41 U.S.C. § 7103(b)(1).  The contractor's claim submission and the requirement that the contracting officer render a final decision on the claim set forth in the CDA are mandatory and are jurisdictional prerequisites before a contractor can file suit in this Court.  *See M. Maropakis Carpentry, Inc. v. United States*, 609 F.3d 1323, 1328 (Fed. Cir. 2010) (stating that "for the Court of Federal Claims to have jurisdiction under the CDA, the contractor must submit a proper claim—a written demand that includes (1) adequate notice of the basis and amount of a claim and (2) a request for

4

a final decision") (citing *James M. Ellett Constr. Co., v. United States*, 93 F.3d 1537, 1541–42 (Fed. Cir. 1996)).

While the CDA itself does not define the term, the Federal Acquisition Regulations ("FAR") 2.101(b) defines a "claim" as follows:

> Claim means a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or related to the contract.

FAR 2.101(b). The FAR also provides that:

> *A voucher, invoice, or other routine request for payment that is not in dispute when submitted is not a claim.* The submission may be converted to a claim, by written notice to the contracting officer as provided in 33.206(a), if it is disputed, either as to liability or amount or is not acted upon in a reasonable time.

FAR 2.101(b) (emphasis supplied); *see also Parsons Global Servs., Inc. v. McHugh*, 677 F.3d 1166, 1170 (Fed. Cir. 2012); *Reflectone, Inc. v. Dalton*, 60 F.3d 1572, 1575-76 (Fed. Cir. 1995).

Demands for payment are classified as either "routine" or "non-routine" under this definition.[4] *Parsons*, 677 F.3d at 1170. In the case of "routine" demands, there must be a pre-existing dispute for the demand for payment to constitute a claim under the CDA. *Id.*

The CDA permits a contractor to file a direct action disputing the final decision of a contracting officer to this Court within 12 months of receiving the decision on a claim. 41 U.S.C. § 7104(b)(3). A contractor may also seek review in this Court if the contracting officer fails to respond to a contractor's claim within 60 days, as provided in the CDA. 41 U.S.C. § 7103(f). As such, the predicate for jurisdiction under the CDA is bringing an action directly to this Court after receiving a contracting officer's final decision on a claim or a deemed denial of a claim. 41 U.S.C. § 7104(b); *Kellogg Brown & Root Servs., Inc. v. United States*, 115 Fed. Cl. 46, 51–52 (2014).

---

[4] Whether a request for payment is routine or non-routine is a factual distinction, which depends on the circumstances in which the requested costs arose. *Parsons*, 677 F.3d at 1170. "A routine request is one incurred and submitted 'in accordance with the expected or scheduled progression of contract performance.'" *Id.* (quoting *Ellett*, 93 F.3d at 1542–43). "Such requests are 'made under the contract, not outside it' and include invoices, vouchers, progress payments, and other requests for costs under the contract's terms." *Id.* (internal citations omitted). In contrast, a non-routine request is one seeking compensation because of unforeseen or unintended circumstances or action on the government's part that ties it to the demanded costs. *Id.*

## IV. LEGAL ANALYSIS

### A. The Court Lacks Jurisdiction to Consider CCHPS's Reconciliation of Payments Claim

With the above authorities in mind, the question for decision on the government's motion to dismiss plaintiff's claim for reconciliation of payments is whether CCHPS submitted a claim for these payments to the contracting officer for a final decision as contemplated by the CDA. If this question is answered in the negative, the Court lacks the necessary jurisdiction to consider the claim.

In its complaint, CCHPS seeks the "reconciliation of outstanding payments due to CCHPS" under its contract with CSOSA. Compl. at ¶ 8. The parties agree that that CCHPS submitted invoices to CSOSA for payment in May, June, July, and August 2012, and that a billing dispute arose over the invoices. Def. Mot. at 2; Pl. Op. at 3-4; Def. App. at A4. CCHPS appears to argue that these invoices became a valid CDA claim once the government disputed the invoices in letters dated November 7, 2012 and March 25, 2013. Pl. Op. at ¶¶ 4-5.

In *Parsons*, this Court held that invoices and other requests for costs under a contract's terms are routine requests for payment. 677 F.3d at 1170. For those invoices to be considered a claim under the CDA, CCHPS must show that the invoices were in dispute at the time the contractor submitted them to CSOSA. *See Parsons*, 677 F.3d at 1170 ("If the request for payment is 'routine,' a pre-existing dispute is necessary for it to constitute a claim under the CDA."); *see also Reflectone*, 60 F.3d at 1576-77.

Here, CCHPS fails to show that it submitted a claim under the CDA for the monetary relief that it seeks in the complaint. There is no evidence that CCHPS's invoices were in dispute at the time they were submitted to the government. To the contrary, the letters cited by CCHPS show that the dispute over the invoices arose many months after the invoices were submitted to the government–in November 2012 and March 2013. And CCHPS points to no other document or correspondence to show that the invoices were in dispute *at the time submitted*.

That the government later disputed CCHPS's invoices does not convert these routine requests for payment into a claim under the CDA. *Parsons*, 677 F.3d at 1171.[5] Because CCHPS puts forward no evidence to show that it submitted a claim for reconciliation of payment under

---

[5] CCHPS also incorrectly relies upon the contracting officer's March 25, 2013 decision to support its argument that the Court possesses jurisdiction over this claim. As established above, CCHPS did not submit a claim for reconciliation of outstanding payments to the contracting officer. As a result, the contracting officer had no authority to issue a final decision on such a claim—a necessary prerequisite before commencing proceedings in this Court. *See, e.g., D.L. Braughler Co., Inc., v. West*, 127 F.3d 1476, 1480 (Fed. Cir. 1997) ("If a contractor's submission fails to meet all of the above requirements, it is not a 'claim,' and the contracting officer has no authority to issue a final decision on the submission. As a result, any subsequent proceedings on the submission have no legal significance.") (citations omitted).

the CDA, there is no jurisdictional basis for this Court to consider CCHPS's monetary claim here. The claim, therefore, must be dismissed for lack of subject-matter jurisdiction. *See, e.g., Advanced Materials, Inc. v. United States*, 46 Fed. Cl. 697, 701 (2000) ("Absent a valid 'claim,' no final decision is possible, and thus, no basis for jurisdiction exists."); *Witherington Const. Corp. v. United States*, 45 Fed. Cl. 208, 211 (1999) ("[A] contracting officer's decision that is invalid may not serve as a basis for a CDA action.").

> **B. CCHPS's Challenge of the Government's Termination for Cause Decision Is Barred by the CDA's Statute of Limitations**

Although the CDA would ordinarily provide the Court with jurisdiction over CCHPS's claim challenging the government's termination for cause decision,[6] the CDA requires that such a claim be brought within the law's one-year statute of limitations. 41 U.S.C. § 7104(b)(3); *Uniglobe Gen. Trading & Contracting Co. v. United States*, 115 Fed. Cl. 494, 505 (2014) ("[t]he one-year statute of limitations . . . does not begin to run . . . until the contractor has received from the contracting officer a final decision on its claim."). It is well settled that a contracting officer's decision terminating a contract for default is a government claim that commences the running of the statute of the limitations. *See Malone v. United States*, 849 F.2d 1441, 1443-44 (Fed. Cir. 1988) ("Because the default termination in this case was a government claim, [plaintiff] properly appealed it without first submitting its own claim to the [contracting officer]."). To be timely, CCHPS must have filed their claim challenging the termination for cause no later than one-year after CCHPS received the contracting officer's final decision.

It is undisputed that the contracting officer issued a final decision terminating CCHPS's contract for cause on November 28, 2012 and that CCHPS received the contracting officer's final decision on the same date. Compl. at ¶ 7; Def. App at A3. CCHPS commenced this action on March 21, 2014, well after the one-year statute of limitations period expired on November 28, 2013. Therefore, CCHPS's claim is untimely, unless the statute of limitations has been tolled.

CCHPS argues that the limitations period has been tolled in this case because a nexus exists between the contracting officer's final decision and the billing dispute addressed in the government's March 25, 2013 letter. Pl. Op. at 3-4. The Court must disagree.

To toll the statute of limitations, CCHPS must show that it timely sought reconsideration of the contracting officer's final decision. *Arono v. United States*, 49 Fed. Cl. 544 (2001). In *Arono*, this Court held that when a contractor timely submits a request for reconsideration of a final decision to the contracting officer, the time that the contracting officer spends reviewing the request suspends both the finality of the decision and the time for appeal under the CDA. *Id.* at 549; *see also Environmental Safety Consultants, Inc. v. United States*, 95 Fed. Cl. 77, 94 (2010). "[The] suspension of the finality of a contracting officer's decision requires both a *determination that the contractor had actually sought reconsideration* as well as a determination that the

---

[6] The term "termination for cause" is the term used in a contract for commercial items for a termination for default. *See* FAR 12.403(c).

contracting officer had recognized the request." *Metrotop Plaza Assocs. v. United States*, 82 Fed. Cl. 598, 601 (2008) (emphasis supplied).

Here, CCHPS fails to show that it submitted a timely request for reconsideration of the contracting officer's termination decision. A plain reading of the government's March 25, 2013 letter shows that the parties engaged in negotiations to resolve CCHPS's outstanding invoices after the contract had been terminated. But, there is no mention in the letter of a request to reconsider the contracting officer's decision to terminate the contract for cause. Nor is there any indication in the letter–nor in any of the other evidence put forward by CCHPS–that the contracting officer conducted a review of the decision to terminate the contract.

Because CCHPS did not request reconsideration of the contracting officer's decision to terminate the contract for cause, and there is no evidence to show that the contracting officer undertook such a review, the time to appeal the contracting officer's final decision has not been suspended. *Id*. ("[W]ithout a review of the request, the finality of the earlier decision could not be suspended."); *see also Guardian Angels Medical Service Dogs, Inc., v. United States*, No. 14-20C (Fed. Cl. January 22, 2015) ("Because the [c]ontracting [o]fficer did not reconsider her decision, the statute of limitations was never tolled. . . ."); *Educators Assocs., Inc. v. United States*, 41 Fed. Cl. 811, 813–15 (1998) (finding that because there was no evidence that the contracting officer considered the plaintiff's request for reconsideration, the date of the original final decision, not the date of the contracting officer's letter reaffirming the decision, commenced the statute of limitations). For these reasons, the Court finds that there was no tolling of the statute of limitations period here.

V.     **CONCLUSION**

Because CCHPS fails to show that it submitted a claim for monetary relief under the CDA prior to commencing this action, plaintiff's reconciliation of payments claim must be dismissed for lack of subject matter jurisdiction.

CCHPS also fails to show that it commenced its challenge to the contracting officer's termination decision within one year of receiving the decision. Plaintiff's claim challenging the termination decision is, therefore, untimely and must also be dismissed for lack of subject matter jurisdiction.

For the foregoing reasons, the government's motion to dismiss is **GRANTED**. Judgment shall be entered accordingly.

Each party shall bear their own costs.

**IT IS SO ORDERED**.

s/ Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
Judge